# IN THE COURT OF APPEALS OF IOWA

No. 22-1783
Filed May 10, 2023

**IN THE MATTER OF THE GUARDIANSHIP OF JAMIE KAY WENDT,**

**WILLIAM WENDT and MARY "PAT" WENDT,**
    Appellants.
_____

Appeal from the Iowa District Court for Crawford County, Steven J. Andreasen, Judge.

A mother and father appeal the denial of the mother's request to remove the co-guardians of their adult dependent daughter and the denial of the father's request for visitation. **AFFIRMED AS MODIFIED.**

Kyle E. Focht of Focht Law Office, Council Bluffs, for appellants.

Matthew Hudson, Harlan, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

William (Bill) and Mary Patricia (Pat) Wendt appeal the denial of Pat's request to remove the co-guardians of their adult dependent daughter and denial of Bill's request for visitation. Pat argues the co-guardians should be removed for failure to perform their lawful duties. Bill requests supervised visitation after a prior court order revoked his visitation. Pat and Bill also request that their appellate attorney fees be assessed against the appellees. Upon our de novo review, we affirm the district court's decision to not remove the co-guardians or award visitation to Bill. We decline to award appellate attorney fees.

### I.      *Background Facts and Proceedings.*

Bill and Pat are the natural parents of the protected person, Jamie. Jamie was born in 1972 and has an intellectual disability. When Jamie was young, Pat left Jamie in Bill's care and moved out of Iowa. When Jamie turned eighteen, the court appointed Bill and his then-wife Cindy to be Jamie's co-guardians. Bill and Cindy had a daughter together named Andrea. Between 1993 and 1994, Cindy divorced Bill and accused him of abusing Jamie, Andrea, and herself. An investigation by the agency now known as the Iowa Department of Health and Human Services resulted in a founded report regarding sexual abuse of Jamie. No criminal prosecution followed, but the court removed Bill as a co-guardian in 1995. Pat returned to Iowa in the mid-nineties, renewed a romantic relationship with Bill, and married Bill in 2006 or 2007.

Since 1997, Bill and Pat have engaged in various attempts to remove Jamie's guardian(s)[1] and establish visitation rights. We will not recite decades of pleadings herein but note a few highlights relevant to the visitation question before us. In 1998, the parties filed a visitation agreement, which provided visitation provisions for Bill and Pat for an initial period of six months. The parties were unable to reach an additional visitation agreement at the end of that six-month period. In 2000, the court entered a ruling adopting and approving the parties' prior visitation agreement on a permanent basis and denying Bill and Pat's requests for unsupervised visitation. In 2008, the parties amended their visitation agreement to permit some visitation outside of the Camelot or WESCO facilities (where Jamie lived and worked) with supervision by Bill's sisters or another individual approved by the co-guardians.

In 2009, Jamie moved out to Andrea's family farm. Although Bill was not allowed visits at Andrea's home, Pat was permitted such visits until she and Bill accused Andrea and her family of dependent adult abuse. Those accusations were determined to be unfounded. In 2010, Cindy and Andrea filed a petition to modify or terminate the 2008 visitation agreement. In 2012, the court terminated Bill's right to court-ordered visitation with Jamie. A panel of our court affirmed this decision on appeal. *See In re Guardianship of J.K.W.*, No. 12-278, 2013 WL 2145756, at *3 (Iowa Ct. App. May 15, 2013).

In 2017, Jamie began receiving day habilitation services three times each week through Genesis Development. In early 2018, Jamie was diagnosed with

---

[1] Jamie's half-sister, Andrea, was added as a co-guardian in 2007.

dementia, and the co-guardians sought court approval to place Jamie in a restrictive residential setting. Jamie then began living in a waiver home also operated by Genesis. In early 2019, Jamie fell and fractured her pelvis. Jamie was transferred to Good Samaritan Nursing Home (Good Sam) for rehabilitation. Given Jamie's positive adjustment after one month of rehabilitation, Good Sam became her permanent placement.

In September 2018, Bill filed a motion for visitation with Jamie. The court set the matter for hearing, but various delays followed. In August 2021, Pat filed a petition to remove Cindy and Andrea as co-guardians and appoint herself or another suitable person as the successor guardian. The two matters were consolidated and heard by the court in March 2022. The court issued its findings, conclusions, and order in September. Pat and Bill filed a timely appeal.[2]

## II. Review.

Under Iowa Code section 633.33 (2018), "[a]ctions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity." As this case involved other matters subsequent to the involuntary appointment of guardians, it was triable in equity. *See In re Guardianship of Murphy*, 397 N.W.2d 686, 688 (Iowa 1986). Therefore, our review is de novo. *See In re Guardianship of Hedin*, 528 N.W.2d 567, 581 (Iowa 1995); Iowa R. App. P. 6.907.

---

[2] The appellees filed a statement waiving their opportunity to file a brief in this appeal. *See* Iowa R. App. P. 6.903(3).

Despite this de novo review, we recognize "that the removal of guardians rests in the sound discretion of the court and we will not interfere, where there is some basis for the order." *In re Guardianship of Cannon*, 1 N.W.2d 217, 220 (Iowa 1941); *accord In re Guardianship of Nobiling*, No. 14–1847, 2016 WL 757410, at *3 (Iowa Ct. App. Feb. 24, 2016). We also give weight to the fact findings of the district court, especially concerning the credibility of witnesses, but are not bound by those findings. *See* Iowa R. App. P. 6.904(3)(g).

### III. Petition to Remove Co-Guardians.

Pursuant to Iowa Code section 633.65 (2021), the court may remove a fiduciary[3] when that fiduciary "is or becomes disqualified under sections 633.63 and 633.64, has mismanaged the estate, failed to perform any duty imposed by law, or by any lawful order of court, or ceases to be a resident of the state." Pat argues Cindy and Andrea should be removed for failure to perform their duties imposed by law.[4] Since the court has not specifically limited the duties and powers of the co-guardians, their responsibilities and authority, which may be exercised without prior court approval, include the following:

> a. Making decisions regarding the care, maintenance, health, education, welfare, and safety of the protected person except as otherwise limited by the court.

---

[3] "Fiduciary" is defined to include a guardian. Iowa Code § 633.3(19).

[4] The appellants also note that Cindy and Andrea failed to file timely annual reports for the last three reporting cycles prior to the March 2022 hearing and, pursuant to Iowa Code section 633.32, delinquent reports will subject the fiduciary to removal under section 633.65. The reports were eventually filed. It is not clear that the appellants pled this cause for removal at the district court level. In any event, they failed to secure a ruling thereon and therefore have not preserved error for our review. *See City of Des Moines v. Ogden*, 909 N.W.2d 417, 423 (Iowa 2018) ("[W]hen a party has presented an issue, claim, or legal theory and the district court has failed to rule on it, a rule 1.904(2) motion is proper means by which to preserve error and request a ruling from the district court." (citation omitted)).

    b. Establishing the protected person's permanent residence except as limited by subsection 3.

    c. Taking reasonable care of the protected person's clothing, furniture, vehicle, other personal effects, and companion animals, assistive animals, assistance animals, and service animals.

    d. Assisting the protected person in developing maximum self-reliance and independence.

    e. Consenting to and arranging for medical, dental, and other health care treatment and services for the protected person except as otherwise limited by subsection 3.

    f. Consenting to and arranging for other needed professional services for the protected person.

    g. Consenting to and arranging for appropriate training, educational, and vocational services for the protected person.

    h. Maintaining contact, including through regular visitation with the protected person if the protected person does not reside with the guardian.

    i. Making reasonable efforts to identify and facilitate supportive relationships and interactions of the protected person with family members and significant other persons. The guardian may place reasonable time, place, or manner restrictions on communication, visitation, or interaction between the adult protected person and another person except as otherwise limited by subsection 3.

    j. Any other powers or duties the court may specify.

Iowa Code § 633.635(2). Pat specifically argues Cindy and Andrea have violated paragraphs (a), (d), (e), (g), (h), and (i). We address them in four categories.

A.    *Paragraphs (a) and (e): Care, Health, and Welfare.*

We find the co-guardians have fulfilled their responsibilities under paragraphs (a) and (e). Like the district court, we find "no credible evidence submitted suggesting that Jamie's medical needs and welfare are not being adequately addressed." The co-guardians have maintained regular contact with the staff at Good Sam and secured appropriate treatment as needed. Pat admitted during the hearing that Good Sam provides for all of Jamie's needs. Pat's expert questions Jamie's diagnoses of post-traumatic stress disorder (PTSD) and dementia. However, the lack of explicit record-keeping as to how Jamie was

diagnosed does not completely undermine the diagnoses. Pat's medical expert did not test Jamie for PTSD or dementia. Moreover, it was not unreasonable or inappropriate for Cindy and Andrea to bring forward good-faith concerns regarding Jamie's (1) unusual behavior of wanting to shower and change her clothes after seeing Bill and (2) confusion and memory loss, and then proceed to follow the advice and recommendations of Jamie's healthcare providers.

*B. Paragraphs (d) and (g): Self-Reliance and Appropriate Services.*

We find the co-guardians have fulfilled their responsibilities under paragraphs (d) and (g). Like the district court, we agree that "Jamie is probably capable of doing more things for herself than what she is currently doing and would benefit from being prompted or required to do so" but conclude that the co-guardians have made "reasonable efforts to facilitate and encourage Jamie's sense of self-reliance and independence." While true that Jamie's responsibilities and activity levels decreased at Good Sam, she is still responsible for her personal hygiene and has opportunities to participate in activities both in and out of the facility. The record also indicates that more activities are becoming available as COVID-19 restrictions continue to wane. Jamie's condition and behavioral issues complicate taking her out and require additional assistance for the guardians or other family members. The district court specifically found Andrea credible "in regard to risks, limitations, and a decline in Jamie's condition since she lived with Andrea in her home." The court also observed that Andrea is a strong advocate for Jamie to be more active and has expressed concerns about "down time." Whether it means staying at Good Sam or moving elsewhere, indications are that

Cindy and Andrea will continue to support Jamie's self-reliance and independence, as well as facilitate appropriate training, educational, and vocational services.

    *C.     Paragraph (h): Regular Contact.*

We find the co-guardians have fulfilled their responsibilities under paragraph (h). Pat alleges that Cindy and Andrea do not spend time with Jamie outside of their time supervising Pat's visits. Pat also points to the testimony of a Good Sam employee, who could not recall the co-guardians taking Jamie outside the facility in the past three years other than for medical visits. Andrea testified that one reason she has not taken Jamie on outings recently is fear of being sued by Pat and Bill for anything that goes wrong during an outing. Jamie may have a fall risk, experiences seizures, and sometimes uses a walker. She has also presented behavioral issues in public, including yelling and screaming, disrobing, soiling herself by refusing to use the toilet, attempting to get out of moving vehicles, and walking out into traffic. Despite the lack of public outings, the record reflects that Cindy and Andrea visit Jamie at Good Sam and maintain regular contact with the staff there as well.

    *D.     Paragraph (i): Supportive Relationships with Others.*

We find the co-guardians have fulfilled their responsibilities under paragraph (i). Like the district court, we find Cindy and Andrea "have not breached their duty to make reasonable efforts to facilitate supportive relationships and interactions between Jamie and other family members and significant other persons." Although the co-guardians have not arranged visitation with anyone from Pat and Bill's side of the family, there is no indication any of those family members requested or attempted to visit Jamie or that Jamie requested any such

interactions. Despite the limited relationships with Pat and Bill specifically, the co-guardians have not failed overall in their lawful duties and have attempted to act in accordance with Jamie's best interests. The court made adverse credibility findings against Pat and Bill in this case, concluding they were motivated by their own desires rather than Jamie's best interest. Pat's visitation was hampered at times by the co-guardians' strict interpretation of the previous court order, but the present order adopts a visitation agreement of the parties that has not been appealed. Likewise, it was not a dereliction of the co-guardians' duties to prevent contact with Bill pursuant to the court's 2012 order.

Because Andrea and Cindy have not failed to perform the duties imposed by law, we affirm the district court's decision to not remove them as co-guardians.

## IV. Motion for Visitation.

Bill argues the co-guardians failed to place "reasonable time, place, or manner restrictions on communication, visitation, or interaction" between Jamie and himself. *See* Iowa Code § 633.635(1)(f) (2018). He requests we grant him supervised visitation with Jamie. Although the court's 2012 order explicitly revoked Bill's visitation, Andrea and Cindy have forbidden all contact, not just physical, between Bill and Jamie. This degree of separation requires court approval: "A court shall approve the denial of all communication, visitation, or interaction with another person only upon a showing of good cause by the guardian." *Id.* § 633.635(2)(d). This provision of the Iowa Code was added in 2015. *See* 2015 Iowa Acts ch. 59, § 2. To the extent that the court's 2012 order did not explicitly address contact beyond physical visitation, it effectively identified good cause for halting contact between Bill and Jamie—namely, the founded allegation of sexual

abuse, Jamie's behavior after visits with Bill (including expressing a need to shower), Bill's minimal involvement in prior visitation, and Bill being the source of arguments with the co-guardians and third parties during visits. The district court's latest ruling made a consistent finding:

> At a minimum, consistent with Section 633.635(2), the Court would reaffirm the discretion of the Guardians to make reasonable efforts to identify and facilitate supportive relationships and interactions between Jamie and family members, including Bill, and in placing reasonable time, place, or manner restrictions on communication, visitation, or interaction between Jamie and Bill, which, in this case, could include a complete denial of such contact or communication.

The court credited the testimony of Bill's expert, who explained "that Jamie exhibited no indication of fear or anxiety in regard to Bill" but found no reason for the court's 2012 denial of Bill's visitation to change. Bill argues that supervised visitation in Jamie's restrictive living facility would eliminate any concern of inappropriate behavior or contact between Bill and Jamie. However, the present concern goes beyond new acts of wrongdoing. As the district court stated,

> [Bill's] visitation request is not being denied because the Court finds there is a specific risk of another sexual assault if visits were to occur. As discussed above, the Court considers whether there is a risk of any negative reactions or effects upon Jamie from in-person visits. Additionally, the Court simply considers whether in-person visits and contact between Bill and Jamie are needed or reasonable to facilitate a "supportive" relationship for Jamie.

Bill continues to maintain that Cindy made up the allegations of sexual abuse for her benefit during their divorce. He points to his unanswered requests for admissions in this litigation (Exhibits 24 and 25), which arguably constitute admissions to the statements therein regarding the falsity of the allegations. *See* Iowa R. Civ. P. 1.510(2). Counsel for the co-guardians argued the requests were irrelevant and that he never received them despite the electronic filing. As the

district court noted, the department concluded the abuse report was founded, and this finding was confirmed through previous litigation in this guardianship. Even if the requests were deemed admitted, the court was within its discretion to afford them the weight it deemed appropriate. Moreover, setting aside the alleged incident of sexual abuse still leaves the record replete with evidence supporting the court's decision, such as Bill's conduct during visits and Jamie's behavior afterward. Ceasing contact with Bill has been and continues to be in Jamie's best interests. Accordingly, we clarify the district court's ruling and find good cause exists to approve the denial of all communication, visitation, or interaction between Bill and Jamie.

## V. *Disposition.*

We affirm the district court's order denying Pat's request to remove Cindy and Andrea as co-guardians and denying Bill's request for visitation with Jamie. Again, we clarify the district court's ruling to state that good cause exists to approve the denial of all communication, visitation, or interaction between Bill and Jamie. Further, even if Bill and Pat were entitled to attorney fees, they point us to no statutory authority to award them with this result. We therefore deny their request to award appellate attorney fees.

**AFFIRMED AS MODIFIED.**